Ganka Hadjipetrova, Esq.
State Bar No. 274073
3080 South Court
Palo Alto, CA 94306
Tel.: (408) 910-0390
Fax: (650) 433-5471
Email: ganka@hadjipetrovalaw.com

Attorneys for Plaintiffs
TMT Investments Plc, German Kaplun and Alexander Morgulchik

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TMT INVESTMENTS PLC,<br><br>GERMAN KAPLUN, and<br><br>ALEXANDER MORGULCHIK,<br><br>          Plaintiffs,<br><br>     vs.<br><br>JOHN DOE, 1-10,<br><br>          Defendants. | Case No.:<br><br>**COMPLAINT FOR DEFAMATION, INVASION OF PRIVACY, INTERFERENCE WITH BUSINESS RELATIONS, AND TRADEMARK INFRINGEMENT** |

Plaintiffs TMT Investments Plc, German Kaplun, and Alexander Morgulchik ("Plaintiffs") bring this Complaint for Defamation and Interference with Business Relations ("Complaint"), and hereby allege as follows:

INTRODUCTION

1.     Plaintiff TMT Investments PLC is a public company traded on the London Stock Exchange.  The company specializes in investing in internet-based start-ups across a variety of

1

industries, including a number of Silicon Valley start-ups.  Plaintiffs German Kaplun and Alexander Morgulchik are leading members of TMT Investments' management team.

2.      In the Fall of 2014, Defendants began publishing the blog sites armdconflict.wordpress.com and tmtinvestments.wordpress.com.  The blog armdconflict.wordpress.com ("Armdconflict blog") is dedicated to describing a perceived conflict between German Kaplun and Alexander Morgulchik and the CEO of Armada OAO, a software and IT services public company traded on the Russian stock exchange.  The blog tmtinvestment.wordpress.com ("TMT blog") publishes articles which question the business integrity of Plaintiff TMT Investments and management team members, including Plaintiffs Kaplun and Morgulchik.  The heading of the tmtinvestment.wordpress.com blog is "TMT Investments PLC: Venture Fund or Something Else."

3.      Since the beginning of the publication of the two blogs hosted by wordpress.com until this moment, there have been more than 15 postings published on the Armdconflict blog site and more than 4 postings published on the TMT blog site.  All postings contain disparaging and false factual statements defamatory to one or more of the Plaintiffs TMT Investments PLC, German Kaplun, and Alexander Morgulchik.

4.      In October 2014, Defendants began publishing the Facebook page "TMT Investments Plc" at http://www.facebook.com/tmtinvestments ("Facebook page").  The Facebook page is using TMT Investments' trade name without authorization and has created a serious risk of confusion in the public as to Plaintiff TMT Investments' sponsorship or approval of the publications on the Facebook page.

5.      Similarly to the two wordpress.com blogs, the Facebook page is dedicated exclusively to treating TMT Investments and individual members of the company's management team.  The Facebook page contains links to the two blogs.

6.      Defendants' defamatory and disparaging statements on the wordpress.com blogs and their deceptive posing as legitimate representatives of Plaintiff on the Facebook page have been highly harmful to Plaintiffs' reputation, have impermissibly invaded Plaintiffs' privacy by

COMPL. FOR DEFAMATION, INVASION OF PRIVACY, INTERF. WITH BUS. REL., TRADEMARK INFR.

placing Plaintiffs in a false light and appropriating Plaintiff TMT Investments' name, and have interfered with Plaintiffs' business relations thereby causing significant harm to Plaintiffs' business and occupation.


PARTIES

7.     Plaintiff TMT Investments PLC is a public limited company with a registered office in the Bailiwick of Jersey, Channel Islands.

8.     Plaintiff German Kaplun, a citizen of the Russian Federation, is the Head of Strategy of TMT Investments.

9.     Plaintiff Alexander Morgulchik, a citizen of the Russian Federation, is the Head of Business Development of TMT Investments.

10.    Defendants John Doe 1 – 10 are the publishers of the blog at URL address armdconflict.wordpress.com ("Armdconflict blog"), the blog at URL address tmtinvestments.wordpress.com ("TMT blog"), and the Facebook page "TMT Investments Plc" at URL address https://www.facebook.com/tmtinvestments ("Facebook page").  The true names and capacities of the defendants named herein as Does 1 through 10 are unknown to Plaintiffs, who therefore sue them under these fictitious names.  Plaintiffs will amend this Complaint to add the Defendants' true names and capacities when they become known.


JURISDICTION AND VENUE

11.    The tortuous acts of defamation perpetrated via the Defendants' publications on the two wordpress.com blog sites, owned and managed by Automattic, Inc., and the Facebook page, owned and managed by Facebook, Inc., are a substantial part of the events giving rise to this action.  The tortuous acts occurred in the Northern District of California, where the principal place of business of the service providers Automattic, Inc. and Facebook, Inc. is located.  The Federal District Court for the Northern District of California therefore has personal jurisdiction over this case.

COMPL. FOR DEFAMATION, INVASION OF PRIVACY, INTERF. WITH BUS. REL., TRADEMARK INFR.

12.     The unauthorized use of Plaintiff TMT Investments' trade name creates confusion as to the association of the publishers of the Facebook page to the Plaintiff and rises to trademark infringement.  The Court therefore has federal question subject-matter jurisdiction.

13.     The matter in controversy exceeds the amount of $75,000, exclusive of interests and costs, and is between unknown defendants and citizens of foreign states.  The Court therefore has also diversity jurisdiction over this case.

14.     Venue is proper as the true residence of Defendants is currently unknown to Plaintiffs.

INTRADISTRICT ASSIGNMENT

15.     The defendants' residence is unknown and the tortious acts giving rise to this action occurred in the County of San Francisco, where the principal place of business of the service provider for the wordpress.com blogs, Automattic, Inc., is located, and in the County of Santa Clara, where the principal place of business of Facebook, Inc. is located.

FACTUAL BACKGROUND

16.     Plaintiffs incorporate by reference as though set forth herein each of the preceding allegations of Paragraphs 1 through 15.

17.     Defendants began publication of the Armdconflict blog in late August 2014. Plaintiffs learned of these publications within several days of their commencement due to the high level of publicity and the rapidly spreading news about the publication within the business community.  The defamatory statements below have been translated from the Russian originals into English.

18.     On August 21, 2014, according to the information visible on armdconflict.wordpress.com, Defendants John Doe 1 – 10 published their first article on the blog.  That article publishes an alleged email exchange correspondence between an anonymous author and Igor Tsoukanov, the Assistant to the Editor-in-Chief of Vedomosti, a Russian daily

COMPL. FOR DEFAMATION, INVASION OF PRIVACY, INTERF. WITH BUS. REL., TRADEMARK INFR.

newspaper.  The anonymous email appears to come from a person formerly in the management of Armada OAO and claims to recount a meeting between the author and Plaintiffs German Kaplun and Alexander Morgulchik, who are shareholders in both TMT Investments and Armada:

> The corporate conflict began with the fact that the German Kaplun and Alexander Morgulchik, who own a large stake in Armada, approached me demanding that they be allowed to manage the finances of the company.  At that time, the company was very actively growing and they, most likely, intended to use the company funds for private purposes.  I refused because Armada is a public company and using its resources to meet the personal needs of individual shareholders, even those who consider themselves more important than others, is unacceptable.  Having been refused, they stated that they believed the company was being managed inefficiently and they would be changing the Board of Directors, which at the time had worked successfully for over 7 years and consisted of the top managers of the company and one independent member of the Board.

19.    The August 21 publication quoted in Paragraph 18 above is factually false. Plaintiffs German Kaplun and Alexander Morgulchik have never approached anyone in Armada OAO with the requirement to allow them to manage the company's finances and have never intended to use company funds for personal purposes, as the anonymous author of the blog claims.

20.    Plaintiffs German Kaplun and Alexander Morgulchik, who are founders and shareholders of Armada OAO, met with the then Chairman of the Board of Directors of Armada Alexei Kuzovkin in the summer of 2013.  If that is the meeting which the author of the blog had in mind in the publication of August 21, the content of the conversation has been distorted beyond recognition.  Plaintiffs Kaplun and Morgulchik met with Mr. Kuzovkin to report their dissatisfaction with the constantly declining financial performance and low market capitalization of the company.  In that connection, Mr. Kaplun and Mr. Morgulchik announced their plans to return to the governing bodies of the organization in 2014.  Plaintiffs' plans did not please Mr. Kuzovkin.  In response, he made an offer to redeem Mr. Kaplun's and Mr. Morgulchik's shares in Armada OAO.  Plaintiffs refused the offer.

21.     On August 26, 2014, the following defamatory statement was published in Defendants' Armdconflict blog under the heading *The Story of a "Shareholder." German Kaplun. Chapter 1. RBC*:

> RBC [Ros Business Consulting, a publicly traded company on the Russian stock exchange, in which Mr. Kaplun was a shareholder and CEO at the time of the initial public offering] went public and sold its shares on the stock exchange in 2002.  This event was preceded by a long-term 'inflation' of the company's value by Kaplun's team literally out of nothing: at the time RBC was a grab-bag of all sorts of questionable sites, including porn sites, which were essential in this case as through them the company pumped up the traffic on their other 'business websites.'  This was done through a simple and efficient 'laundering' mechanism: the huge traffic to porn sites was redirected to sites-teasers which sent this traffic to business sites through all sorts of clever tricks.  Visits statistics were thus artificially increased two, three, five times and that affected the price of advertising and the value of the 'assets,' phonily inflating both.

22.     The August 26 statement quoted in Paragraph 19 above is factually false.  RBK has never manipulated the traffic to its Internet sites, not to mention using porn sites to such purposes.

23.     The following defamatory statement was also published in the Armdconflict blog on September 2, 2014:

> The publicly-traded RBC continued to engage in questionable and/or sham deals with all sorts of websites, online shopping sites, hosting services, Internet messengers and other Internet projects and companies, which were submitted to the market and investors as independent businesses.  In fact, as in the past, most of these 'businesses' were born and developed under the wing of RBC associates or close friends of theirs.

24.     The September 2 statement quoted in Paragraph 20 above is factually false.  As a public company, RBC discloses in detail all its transactions as required by law.  Acquisitions of online businesses are conducted on the basis of independent valuations, and the value of investment transactions is disclosed in the company's annual reports that are independently audited.  As a well-known co-founder of RBC, who had been running the company from mid-2009 until mid-2012, Plaintiff German Kaplun was defamed by this statement.

25.     Also on August 26, Defendants published another defamatory posting in the Armdconflict blog under heading *Armada OAO Acquires TMT Investments . . . NOT REALLY*. The posting included the following factually false statement:

COMPL. FOR DEFAMATION, INVASION OF PRIVACY, INTERF. WITH BUS. REL., TRADEMARK INFR.

It is absolutely clear to what purpose this dynamic businessman [German Kaplun] planned to spend Armada's money - first of all, on the dying TMT Investments, as a flurry of activity in the field of venture capital and start-ups was not so successful and was in great need of additional infusion of money.

26.    The August 26 statement quoted in Paragraph 23 above is factually false. Plaintiff TMT Investments was admitted to trading on the AIM market of the London Stock Exchange in December 2010, and has been growing ever since.  TMT Investments has made over 40 venture capital investments to date (most of them in the US-incorporated companies) and is in a good financial state, as is confirmed inter alia by the Plaintiff's fully audited annual reports and compliance with the relevant stock exchange rules and requirements.

27.    The following defamatory statement was also published in the Armdconflict blog on August 26, 2014: "Why should Armada OAO buy the equity of some questionable self-dealing fund of a notorious group of managers, who became known for leading RBC to bankruptcy and wherefrom they were booted out in scandal."

28.    The August 26 statement quoted in Paragraph 25 above is factually false.  RBC has never declared or been in bankruptcy proceedings.  TMT Investments is managed by a board of directors consisting of 4 directors, 3 of which are non-executive directors (including 2 independent non-executive directors).  The only executive director is not connected to any of the company's shareholders (including Mr. Kaplun) and owns only 0.13% of the company's equity capital.  TMT Investments never invited Armada to invest in TMT Investments.  None of TMT Investments' directors even met any of Armada's managers to discuss this idea.

29.    On August 27, 2014, the following defamatory statement was published in Defendants' Armdconflict blog under the heading *FAQ: The Corporate Conflict in Armada OAO. The Most Frequently Asked Questions about the Conflict*.

The conflict began in 2013 when German Kaplun, finding himself in a desperate financial situation due to questionable investments in ventures and start-up companies through his fund TMT Investments, attempted to involve Armada OAO as an investor in the capital of TMT, which request was denied as such activity is non-characteristic for Armada.

30.    The August 27 statement quoted in Paragraph 27 is factually false.  Plaintiff TMT Investment's business is growing at a stable pace and is in good financial health.  TMT

7

Investments is not "German Kaplun's fund".  Mr. Kaplun is not a director of TMT Investments and together with Defendant Alexander Morgulchik they own approx. 21.8% of the company's equity (as of 14 Nov 2014).

31.     The following defamatory statement was also published on August 27, 2014:
The CEO of Armada is Andrew Voznyak.  The decision of the new Board of Directors to appoint Vitaly Podolski as CEO is void as in this decision many of the procedures required by law were not observed, including: Board members were not notified in advance, a material fact was not disclosed, the grounds for Voznyak's dismissal were not specified, the notes of the Board meeting were not publicly disclosed.

32.     The August 27 statement quoted in Paragraph 29 is factually false.  Vitaly Podolski was appointed the new CEO of Armada in accordance with all requirements of the law.

33.     On September 2, 2014, the following statement was published on Defendants' Armdconflict blog under the heading *An Organized Group of Shareholders Led by German Kaplun Attacks Armada OAO*:
Few people know that the key to the 46-million loan was exactly Armada's shares given to Alfa following a margin call.  This happened in 2008, when the domestic stock market simply collapsed. Kaplun, like any resourceful businessman, could not allow that the large number of shares be a dead weight, and gave them as collateral on the Alfa loan. Hence, the interest of Alfa Group in the situation in Armada.

34.     The September 2 statement quoted in Paragraph 231 above is factually false. While a $46-million loan existed, Armada has absolutely no relation to this loan.  The lender was RBC Investments Cyprus, and the recipient was Pralberto Limited.  This loan was repaid in full in late 2013 by netting off the outstanding balance of the loan against receivables from the creditor.  RBC stock was the only stock that was provided as collateral for the loan; Armada OAO shares have never been pledged as security for the loan.  Furthermore, Alfa was not a party to the loan and has never had any relation to it.

35.     The following factually false statement was also published on September 2, 2014:
By 2002, RBC consisted of many fragmented sites, and the "business content" presented to the general public was actively supported by porn sites in the shade. With such a simple manipulation, the number of visits of the business sites was artificially increased 3 to 5 times.

COMPL. FOR DEFAMATION, INVASION OF PRIVACY, INTERF. WITH BUS. REL., TRADEMARK INFR.

36.     The September 2 statement quoted in Paragraph 33 above is factually false.  The traffic to RBC sites has never been supported by porn sites.

37.     The following factually false statement was also published on September 2, 2014: Starting in 2008, one can find records in almost every monthly report of the meeting of the Board of Directors of RBC that the managers of some obscure sites are buying back their shares, which a couple of years earlier RBC with CEO Kaplun bought from them for amounts with 5 to 7 zeros in dollars.  Thus, in 2008, RBC acquires the online magazine Fidel.ru for $ 8.5 million.  Shortly after, the site ceased to exist.  In 2013, the holding buys 51% of Ogorod.Ru for $ 1 million, but this site's operation will also be "suspended." Here is a question: was the $ 9.5 million spent on worthless assets recorded in the official documents at that value? The answer is obvious.

38.     The September 2 statement quoted in Paragraph 35 above is factually false. According to RBC's audited financial report for 2008, the company acquired 51% of the shares of Fidel Solutions OAO for only $0.4 million, as noted in item 7e(ii) of the report.

39.     The following factually false statement was also published in the Armdconflict blog on September 2, 2014:
An organized group of shareholders led by German Kaplun is very actively trying to convince the market and investors that the management of "Armada" is at war not with them but with all shareholders, since 64% of shareholders voted against the former CEO Kuzovkin. In fact, the situation is reversed - Kaplun through his manipulations convinced the other 38% [err] of shareholders to participate in his adventure to attack, destroy and paralyze, promising as a result what he believed was an ingenious plan to increase the value of shares 10 times.  We now know the actual result of this war: collapse of the share price, lack of prospects for the company, leaving staff.  Kaplun's problem is that he manipulates shareholders well but has no idea how a high-tech company works.

40.     The September 2 statement quoted in Paragraph 37 above is completely unsubstantiated and aims at creating a conflict among the shareholders of Armada.  The false statements published in Defendants' Armdconflict blog have indeed led to a conflict among Armada OAO's shareholders and are the reason for the depreciation of Armada's shares.

41.     The following factually statement was published in Defendants' Armdconflict blog posting of September 5, 2014 under the heading *The Site of the True ("Paper") Armada Attacks…*:
The fact that from the first page of the 'paper' publication of Armada were removed the photo and direct quotes from the illegitimate 'CEO' Vitaly Podolski shows that serious disagreements could arise between Alfa, Podolsky, and German Kaplun about what to do

COMPL. FOR DEFAMATION, INVASION OF PRIVACY, INTERF. WITH BUS. REL., TRADEMARK INFR.

next – whether to ruin Armada further or take a more constructive approach and work toward increasing the company's stock price.

42.     The September 5 statement quoted in Paragraph 39 above is factually false. Vitaly Podolski is Armada's current CEO, appointed by the Board of Directors of the company in accordance with the norms of the law.  This unsubstantiated statement, among others cited in this Complaint, has contributed to the creation of an actual conflict among the shareholders and the management of Armada OAO.

43.     The following factually false statement was published in the Armdconflict blog on September 17, 2014 under the heading *The Start-Ups of the Great Strategist or Beware of Doing Good Deeds*:

> TMT Investments PLC was incorporated on the Island of Jersey in the autumn of 2010. On December 10, 2011, the company had an IPO on the London Stock Exchange.  The IPO raised $ 20 million at a stock price of $ 1.  Now the company's securities are traded at $ 1.1 per share.

44.     The September 17 statement quoted in Paragraph 14 above is factually false. TMT's actual IPO date was December 10, 2010.  On September 17, 2014, TMT Investments' share price was approx. $1.92, according to the LSE web site. The shares currently (as of 20 November 2014) trade at around $1.86 per share.

45.     The following factually false statement was also published in Defendants' Armdconflict blog on September 17, 2014: "90% of the assets of TMT, a shell company, are some start-ups, often created by the owners of the fund or people close to them.

46.     The September 17 statement quoted in Paragraph 44 above is factually false and highly disparaging to Plaintiff.  TMT Investments is not a "shell company".  As of 30 June 2014, TMT Investments had a portfolio of over 30 investments in unconnected, independently run companies.  According to TMT Investments' interim 2014 results, the company's total net assets were around $33 million.

47.     The following factually false statement was also published in the Armdconflict blog on September 17, 2014: "It's not surprising that the notorious financial audit report of the fund for 2013 was performed by some dubious company with the telling name Young Hacker."

COMPL. FOR DEFAMATION, INVASION OF PRIVACY, INTERF. WITH BUS. REL., TRADEMARK INFR.

48.     The September 17 statement quoted in Paragraph 38 above is factually incorrect and highly disparaging to Plaintiff TMT Investments.  The name of TMT Investments' auditors has deliberately been distorted by the author(s) – the actual name of the audit company is UHY Hacker Young.  UHY Hacker Young is well regarded and is among the top 20 certified auditing companies in the UK.

49.     The following factually false statement was also published in the Armdconflict blog on September 17, 2014: "And the conclusions of these 'hackers-auditors' do not appear in the audit report because TMT did not like the conclusions."

50.     The September 17 statement quoted in Paragraph 47 above is patently false.  The auditors' opinion is published on page 18 of TMT Investments' annual report and accounts for the year 2013.

51.     The following factually false statement was also published in the Armdconflict blog on September 17, 2014:

> Here is just one example - not so long ago, 101StartUp, the company of Kaplun's partner Michael Gurevich, invested $ 1.2 million in the entertainment portal Fishki.Net. Obviously, Fishki will soon become subject to a transaction between 101StartUp and TMT, the amount of which will be far beyond 1.2 million.

52.     The September 17 statement quoted in Paragraph 49 above contains a presumption which is not based in fact and suggests that TMT Investments engages in conflict-of-interest deals illegally favoring individual members of its management team.  Such a suggestion is not based in fact and is highly harmful to TMT Investments' reputation.  Related party transactions are tightly regulated by the AIM Rules, and AIM-traded TMT Investments fully complies with the applicable rules.  In cases where the TMT Board of Directors has to make a decision regarding any related party transactions, the relevant related party is excluded from the decision-making process, and the proposed transaction is independently approved by the company's Nominated Adviser, one of a number of regulated corporate finance firms specifically appointed by the London Stock Exchange to supervise AIM-traded companies.

53.     The following factually false statement was also published in the Armdconflict blog on September 17, 2014:

COMPL. FOR DEFAMATION, INVASION OF PRIVACY, INTERF. WITH BUS. REL., TRADEMARK INFR.

Anews [a start-up company in which Plaintiffs have made an investment] is interesting because of the fact that the number of downloads in the iStore and Google Play is obviously inflated, not to mention the fact that there are more successful applications with similar functions, for example, Flipboard and Feedly.  Kaplun's team has been engaged in such spoof operations for a long time: at first, RBC was inflating the traffic, misrepresenting visits to sites, now they are inflating the number of downloads in the app store, which by Western standards amounts to fraud, i.e. deception of investors.  It is easy to do that and costs pennies: one can program a bot or even a mobile virus through which infected machines and device download the application millions of times.

54.     The September 17 statement quoted in Paragraph 51 above is factually false and is extremely harmful to the reputation of Anews and its investors, among which are Plaintiffs TMT Investments and German Kaplun.

55.     The following factually false statement was also published in the Armdconflict blog on September 17, 2014:

To be fair, it should be noted that in TMT's portfolio there are some Western startups and the fund is constantly conducting business with them, but this is just some unimportant activity in the background in petty amounts of 150-250 thousand dollars, all the while, the percent of ownership of the acquired company is never specified as it is negligible.

56.     The September 17 statement quoted in Paragraph 5 above is factually false.  TMT Investments' primary focus is investing in high-growth, internet start-ups and investments vary with regards to the size of the company in which the investment is made.  In line with its announcements policy, Plaintiff TMT Investments announces details of each new investment on the LSE website and on its corporate site, www.tmtinvestments.com, when the size of the new investment exceeds 1% of the TMT Investments' net assets.   In addition, full details of each new investment, disposal and revaluation for each portfolio company are disclosed in the annual and semiannual reports regularly published by TMT Investments on the LSE and its corporate website.

57.     On November 13, 2014, Defendants published the following statement on the TMT blog in English:

Our chief concern that we will try to prove in this blog is that Mr.Kaplun and his partners are using a certain pattern established by them in RBC Company and continued in TMT Investments PLC. This pattern consists of investor fraud, fraudulent business deals, manipulations with financial statements, and outright scam schemes that are used to fool investors. For example, Mr.Kaplun and his associates are known for creating companies, inflating their paper value by conducting a series of false deals through dodgy offshore

COMPL. FOR DEFAMATION, INVASION OF PRIVACY, INTERF. WITH BUS. REL., TRADEMARK INFR.

companies to establish their public investment history and then selling them to investors, which is qualified as investor fraud in any jurisdiction and we have facts to prove it not once, not twice, but over 30 times over 20 years.

58.     The November 13 statement quoted in paragraph 55 above explicitly accuses Plaintiffs TMT Investments and Kaplun of crimes and is therefore libel per se.

59.     On October 26, 2014, the exact same statement as the statement quoted in paragraph 55 above was published in the Facebook page at www.facebook.com/tmtinvestments.

60.     The title of the Facebook page, "TMT Investments," is deceptive to the public as to the source of the publisher and creates a likelihood of confusion.  Upon initial impression, an ordinary visitor of the Facebook page is likely to believe that the page was published by Plaintiff TMT Investments.  Thus a visitor may be inclined to continue reading the page in the belief that it is an authorized publication of Plaintiff and be confused as to the truthfulness of the purported factual statements therein.

61.     The statements cited in the Complaint are only a sample of all defamatory statements on Defendants' blogs hosted by wordpress.com and the Facebook page.  The Complaint is limited to this sample for purposes of brevity.  Many more defamatory and disparaging to Plaintiff and its investors and shareholders appear on the Blog.  Exhibit 1 contains the defamatory statements published in the Armdconflict blog included in the Complaint in the original Russian language.


FIRST CAUSE OF ACTION
DEFAMATION
(all defendants)

62.     Plaintiffs incorporate by reference as though set forth herein each of the preceding allegations of Paragraphs 1 through 61.

COMPL. FOR DEFAMATION, INVASION OF PRIVACY, INTERF. WITH BUS. REL., TRADEMARK INFR.

63.     California Civil Code section 45 provides that libel is a false and unprivileged publication by writing which exposes any person to contempt and ridicule or which has a tendency to injure him in his occupation.

64.     Further California Civil Code section 45a provides that libel which is defamatory without necessity of explanatory matter is said to be libel on its face and does not require proof of special damages as a proximate result of the libel.

65.     Defendants' false and unprivileged publications on the armdconflict.wordpress.com blog, the tmtinvestments.wordpress.com blog, and the TMT Investments Plc Facebook page have caused Plaintiff TMT Investments, its investors and shareholders, and Plaintiffs Kaplun and Morgulchik to suffer significant harm to their business reputation.  The publications directly injured Plaintiffs in respect to their profession and business.

66.     Many of Defendants' defamatory publications also contain innuendo to alleged unlawful and criminal actions of Plaintiffs.  Such defamatory statements are libel on its face and do not require proof of special damages.

67.     Even though Plaintiffs do not need to prove special damages, Plaintiffs are ready to show proof of loss of over $1,000,000 directly caused by Defendants defamatory statements.

68.     In addition, Defendants published the defamatory statements with malice, knowledge of the statements' falsity, or reckless disregard for the truth.

SECOND CAUSE OF ACTION
FALSE LIGHT
(all defendants)

69.     Plaintiffs incorporate by reference as though set forth herein each of the preceding allegations of Paragraphs 1 through 68.

70.     Defendants have publicized material on the Facebook page that has shown Plaintiffs in a false light such that it would be highly offensive to a reasonable person.

COMPL. FOR DEFAMATION, INVASION OF PRIVACY, INTERF. WITH BUS. REL., TRADEMARK INFR.

71.     There is clear and convincing evidence that Defendants knew that the publication would create a false impression about Plaintiffs or that Defendants acted with reckless disregard for the truth.

72.     The created false light impression, Plaintiffs have sustained harm to their business and profession.

73.     Defendants' conduct in publishing the Facebook page was a substantial factor in causing harm to Plaintiffs.

## THIRD CAUSE OF ACTION
## APPROPRIATION OF NAME OR LIKENESS
### (all defendants)

74.     Plaintiffs incorporate by reference as though set forth herein each of the preceding allegations of Paragraphs 1 through 73.

75.     Defendants used Plaintiff TMT Investments' name without permission via publishing a Facebook page titled "TMT Investments."

76.     Plaintiffs have reason to believe that Defendants are Plaintiffs' competitors and have gained commercial benefit by appropriating TMT Investments' name and causing the public to be confused about the true affiliation of the publishers of the Facebook page.

77.     Plaintiffs have been harmed by Defendants' appropriation of TMT Investments' name.

78.     The privacy interests of Plaintiffs outweigh the public interest served by Defendants' use of TMT Investments' name.

## FOURTH CAUSE OF ACTION
## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS
### (all defendants)

79.     Plaintiffs incorporate by reference as though set forth herein each of the preceding allegations of Paragraphs 1 through 78.

COMPL. FOR DEFAMATION, INVASION OF PRIVACY, INTERF. WITH BUS. REL., TRADEMARK INFR.

80.     Defendants were aware of Plaintiff TMT Investments' existing contractual relations with investors  in various business ventures of Plaintiff TMT Investments.

81.     Defendants intended to disrupt the contractual relationships.  Defendants' defamatory publications were a substantial factor causing investors to discontinue their relationships with Plaintiff TMT Investments, thereby inflicting serious economic harm on Plaintiffs.

## FIFTH CAUSE OF ACTION
## INTENTIONAL INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS
### (all defendants)

82.     Plaintiffs incorporate by reference as though set forth herein each of the preceding allegations of Paragraphs 1 through 81.

83.     By the nature of its business, Plaintiff TMT Investments is constantly engaging prospective investors into its ventures.  Plaintiff's business depends on the successful establishment of such relationships.

84.     Defendants were aware of the prospective establishment of the contractual relationship between investors and Plaintiff TMT Investments and intended to disrupt the relationships.

85.     Defendants engaged in defamation and disparagement which were a substantial factor in the actual disruption of the investor relationships, thereby causing substantial economic harm to Plaintiffs.

## SIXTH CAUSE OF ACTION
## TRADEMARK INFRINGEMENT
### (all defendants)

86.     Plaintiffs incorporate by reference as though set forth herein each of the preceding allegations of Paragraphs 1 through 85.

COMPL. FOR DEFAMATION, INVASION OF PRIVACY, INTERF. WITH BUS. REL., TRADEMARK INFR.

87.    The United States federal law, and in particular 15 U.S.C. §§1114 and 1125, prohibit the unauthorized use of a trade name or symbol in commerce which is likely to cause confusion or deceive as to the affiliation or connection with another.

88.    Defendants have created a Facebook page under the title "TMT Investments Plc," which is Plaintiff TMT Investments' trade name.

89.    Defendants' use of Plaintiff's trade name as the title of the Facebook page is deceptive and likely to cause confusion among the pubic as to the affiliation of the publishers with Plaintiff.

90.    Defendants' unauthorized use of Plaintiff TMT Investments' trade name is use in commerce as social media such as Facebook are commonly used to promote businesses and attract customers.  This is especially the case where, as here, the page name is the name of a company.

91.    Defendants' unauthorized use of Plaintiff TMT Investments' trade name has caused significant economic harm to Plaintiffs.


PRAYER FOR RELIEF


For the reasons stated above, Plaintiff TMT Investments PLC, Plaintiff German Kaplun, and Plaintiff Alexander Morgulchik respectfully request the Court to find the Defendants jointly and severally liable for relief under the above causes of action and:

1) Grant injunctive relief in the form of a court order removing the armdconflict.wordpress.com and tmtinvestments.wordpress.com and the Facebook page "TMT Investments Plc" from publication;

2) Award Plaintiff compensatory damages in the amount of $1,500,000 or such other sum as the Court may deem proper to redress the injury to Plaintiffs;

3) Award Plaintiff treble punitive damages;

COMPL. FOR DEFAMATION, INVASION OF PRIVACY, INTERF. WITH BUS. REL., TRADEMARK INFR.

4)  Award Plaintiffs the costs of bringing this action as well as such other relief as the Court may determine to be just and proper.

Dated this 3rd day of December, 2014                    Respectfully submitted,

Ganka Hadjipetrova, Esq.

Attorney for Plaintiffs
TMT Investments PLC
German Kaplun
Alexander Morgulchik

18

EXHIBIT. 1: COMPL. FOR DEFAM., INVASION OF PRIVACY, INTERF. WITH BUS. REL., TRADEMARK INFR.